No. 22,544.

J. A. MCARTHUR and F. J. KUHLEMEIER, *Appellees*, V. THE
INDEPENDENT TORPEDO COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Destruction of Oil Well—Explosion of Nitroglycerin—
Measure of Damages*. The evidence considered in an action for
damages for destruction of an oil well by explosion of a shell of
nitroglycerin while it was being lowered into the well by the shooter,
and *held*, the defendant was not prejudiced by refusal of an instruc-
tion that the measure of damages was the cost of drilling another
well, and by giving an instruction under which the jury · allowed
damages equivalent to the cost of drilling the destroyed well and ex-
penses incurred in trying to save it after the explosion.

2. SAME—*Demurrer to Evidence Properly· Overruled—Expert Wit-
nesses — Instruction*. The proceedings examined, and *held*, a de-
murrer to plaintiffs' evidence was properly overruled, certain wit-
nesses were qualified to give expert testimony, their testimony did
not invade the province of the jury, and an instruction which told
the jury certain facts, if found, constituted negligence, did not invade
the province of the jury.

Appeal from Montgomery district court; JOSEPH W. HOL-
DREN, judge. Opinion filed June 5, 1920. Affirmed.

*W. N. Banks, O. L. O'Brien*, both of Independence, and *G. C.
Spillers*, of Tulsa, Okla., for the appellant.

*Charles D. Welch*, of Coffeyville, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for destruction
of an oil well by explosion of a shell of nitroglycerin while it
was being lowered into the well. The plaintiffs recovered, and
the defendant appeals.

The principal charge of negligence was that the shell con-
taining nitroglycerin was lowered with too great rapidity,
and that its descent was suddenly arrested by undue applica-
tion of the brake, producing a violent jerk, which caused the
explosion. The principal assignment of error is that a de-
murrer to the evidence was overruled.

The evidence was conflicting with respect to every material
matter except one. There was no dispute that to allow a shell

to descend rapidly, and then to make a sudden application of the brake, was bad practice, was liable to cause an explosion, and was dangerous. , There was abundant evidence that the shell was lowered at a greatly excessive rate of speed. Its speed was compared with the speed of the bailer when in use. The bailer is allowed to go down as fast as it will, at full speed, which will cause the crank on the reel to spin. In this instance, when the explosion occurred the crank was spinning with such rapidity that it appeared to experienced men who were present to have gotten beyond control. In lowering a shell of nitroglycerin the crank ought not to turn faster than the hand can follow it. There was abundant proof that just before the explosion the shooter who was lowering the shell set the brake suddenly, and so tight that after the explosion extra effort was required to release it. This phase of the case was covered by two findings, which read as follows:

"Q. 4. Do you find that the shooter, just prior to said explosion, set the brake so as to stop the shell containing nitroglycerin with a sudden jerk? A. Yes.

"Q. 6. Do you find that immediately after said explosion the brake which controlled the reel which contained the line attached to said shell was found to be tightly set? A. Yes."

The explosion occurred at a depth of 200 feet. One of the defendant's experts testified that if a 20-quart shell (the size of the one in question) were permitted to descend by its own weight, it would be dangerous from the time it attained speed, which would probably be within twenty feet; nitroglycerin is a dangerous agency, which must be handled with the utmost care; concussion will explode it, and sudden application of the brake to the reel when a shell is descending rapidly might cause an explosion. The result is, an adequate cause of the explosion proceeding from negligent conduct of the defendant was established, and it was within the province of the jury to draw the inference expressed by the verdict. (*Railway Co. v. Wood,* 66 Kan. 613, 72 Pac. 215.)

It is said that two witnesses for the plaintiffs were not qualified to give expert testimony, and that their testimony invaded the province of the jury. The witnesses were fully qualified, and the testimony which it is claimed invaded the province of the jury related to the one subject which has been referred to, about which there was no disagreement.

It is said the court invaded the province of the jury in respect to the same subject, by instructing the jury that if they found the explosion was caused by excessive speed in lowering the shell, and sudden application of the brake whereby the shell was stopped with a violent jerk, the defendant was negligent. Whenever there is no room for divergent estimates to be placed on conduct, the law makes the estimate. This rule is too well established to need fortification by citation of authority. Here the jury was allowed to find whether or not the facts existed on which the court predicated negligence, but there was no difference of opinion among the men who knew, and there could be no difference of opinion among reasonable men, with reference to the quality of the defendant's conduct, if the explosion occurred from the cause indicated.

The defendant requested the court to instruct the jury that the measure of damages was the cost of drilling another well beside the one which was destroyed. The request was denied, and the court instructed the jury as follows:

"If you find for the plaintiffs herein, then it will be your duty to assess the plaintiffs' damages, and in this connection you are instructed that plaintiffs would be entitled to recover all of the damages which you find from the evidence they suffered as the proximate result of said premature explosion, and if you find that said well and casing therein were destroyed, then plaintiffs would be entitled to recover the value of said well and casing as it was prior to said explosion; and if you further find from the evidence that the plaintiffs acted as reasonably prudent men in endeavoring to save said well, and in so doing expended money and incurred expenses, then plaintiffs would be entitled to recover for such reasonable expense as you find they so expended in endeavoring to save said well."

The argument in support of the requested instruction rests on the assumption, stated in the brief, that the oil-bearing sand was not affected by the explosion, and that another well of the same depth would make the plaintiffs whole. The evidence was to the contrary. Salt water was encountered above the 200-foot level and in several other places. The plaintiffs were not able to case off the salt water after the explosion and prevent it from reaching the oil. However this may be, the plaintiffs were not awarded the value of the well, which according to the evidence was a five-barrel well, and worth $1,500 per barrel. The well cost $3,000. The defendant did not con-

test the amount, and it was fair evidence of what another well would cost. The plaintiffs spent some $900 in trying to save the well. The defendants did not contest the amount, which constituted a proper item of damages. (See cases cited, 8 R. C. L., 450, § 21.) Credit was given the defendant for the value of some salvage, amounting to $47.50. The verdict was for $3,500, and consequently the defendant has no reason to complain of the manner in which the subject of damages was submitted to the jury.

The defendant's employee in charge of the work testified that he took all proper precaution in lowering the charge of nitroglycerin into the well. He said he kept his hand on the brake, which was set just enough to allow the shell to pull itself slowly down the hole, and he was in absolute control all the time. While the shell was going down nicely he felt the jar of the explosion, automatically set the brake, and got away. Several other witnesses who were present when the explosion occurred contradicted him at every vital point. The jury accepted their testimony, and liability of the defendant followed as a matter of course.

The judgment of the district court is affirmed.